(47 App. Div. 467.)

JOHN HURD CO. v. CONSOLIDATED STEEL & WIRE CO.

(Supreme Court, Appellate Division, Second Department. January 30, 1900.)

SALES—PAYMENT BY VENDEE TO BROKER.

The general rule being that a broker employed to sell has no authority, as such, to receive payment, payment by a vendee to a broker, for goods purchased pursuant to an executory contract, made with such broker, fixing prices at which the goods would be sold, and orders for which were sent to the vendor through the broker, is not a defense to an action by the vendor for the purchase price, the name of the vendor being known, and the goods being received from him, and not from the broker.

Appeal from trial term, Queens county.

Action by the John Hurd Company against the Consolidated Steel & Wire Company to recover for goods sold and delivered. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William F. Goldbeck, for appellant.
Thomas B. Cotter, for respondent.

WOODWARD, J. The plaintiff in this action is a domestic corporation engaged in the manufacture of lumber. The defendant is a foreign corporation, engaged in making wire goods, etc., at Allentown, Pa., with an office in New York City. It was necessary in its business 'to have wooden reels for convenience ·in packing and shipping its product, and it purchased the materials for these reels, sawed, planed, etc., ready to be put together, the work of assembling the parts being done at the factory at Allentown. On the 17th of January, 1895, the defendant had a conversation with one W. A. Crombie, resulting in a written memorandum, which was practically an agreed schedule of prices for goods during the year, and which at most was an executory contract, in which Mr. Crombie agreed to furnish the goods needed by the defendant, and the defendant agreed to receive and pay for them, at a given rate for the specified sizes and quantities. There was a stipulation in the memorandum that "any material unfit for our use to be thrown out, and deducted from your invoices," and that, "unless otherwise mutually agreed, the reels are to be manufactured by Mr. Hurd,"—meaning, in all probability, the president and general manager of the plaintiff. It appeared upon the trial that Mr. Crombie had no materials for sale; that he had no mills, lumber yards, men to handle lumber, or any means of carrying out the agreement except by getting some one else to fill the contract; and that he was, as a matter of fact, employed as a broker by the defendant to procure purchasers for the output of the mills of the plaintiff, and that he was given a commission of 5 per cent. upon the goods shipped and paid for. The plaintiff, during the year 1895 and a portion of the year 1896, shipped goods to the defendant, the invoices showing that they were sold from the plaintiff to the defendant; and the latter paid for the earlier invoices directly to the plaintiff. The orders for the goods were, for the most part, sent to Mr. Crombie, and by the latter transmitted to the plaintiff; but there is nothing in this inconsistent with the idea that Mr. Crombie was merely a broker in the matter, and that the orders were passed through his hands for the purpose of informing him of the extent of the business. The trial court very properly held that the executory contract or agreement with Mr. Crombie was not involved in this action; that the contract of sale in each instance, in the matters sued upon, was between the plaintiff and defendant; and that payment on the part of the defendant to Mr. Crombie, or to the firm which he represented, could not relieve the defendant from its obligation to the plaintiff. While the case is complicated by certain shipments made on account of Mr. Crombie, and questions growing out of defects in materials, indirect payments, etc., the main question at issue, and upon which all others hinge, is whether the defendant purchased the goods from Mr. Crombie under the terms of the ·memorandum, and, if he did not, whether the latter was authorized to receive payment for the plaintiff. The learned trial court held as a matter of law that the memorandum with Mr. Crombie was not involved in the proceeding, that the transactions embraced in the action were between plaintiff and defendant, and that payments made to Mr. Crombie did not discharge

the debt to the plaintiff. If the court was right in so holding, then the judgment should be affirmed, for a careful consideration of all the matters called to the attention of the court fails to discover reversible error. The general doctrine is that a broker employed to sell has no authority, as such, to receive payment (Higgins v. Moore, 34 N. Y. 417, and authorities cited), and this rule is only departed from when the person contracting for the sale has the property in his possession, and delivers it. He is then "clothed with the indicia of authority to receive payment, especially when the owner is not known." Higgins Case, supra. In the case at bar the owner was known; the person contracting for the sale did not have the property in his possession, and did not deliver the same; nor were any of the payments under the early orders made to him. In fact, there were no payments made to Mr. Crombie for any of the goods involved in the present action with the consent of the plaintiff, and there was no custom or usage in the business which would warrant the defendant in making payments to Mr. Crombie on account of the plaintiff. There is, probably, no reason to doubt that the defendant did, in fact, pay Mr. Crombie, supposing that the latter would discharge the obligation to the plaintiff, but that does not afford a good reason why the plaintiff should be defeated of its right to recover for the goods which it has furnished the defendant, and for which it has not been paid. Hahnenfeld v. Wolff, 15 Misc. Rep. 133, 36 N. Y. Supp. 473. There is nothing, therefore, to take this case out of the general rule, and the judgment, subject to the stipulation made by the plaintiff, should be affirmed, with costs. All concur, except HIRSCHBERG, J., taking no part.